# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHICAGO MERCANTILE     )
EXCHANGE INC.,     )
             )
       PLAINTIFF,    )     **CASE NO. 03 C 4919**
             )
    v.          )     **JUDGE JOAN H. LEFKOW**
             )
COMMODITIES MANAGEMENT   )     **MAGISTRATE JUDGE ARLANDER KEYS**
EXCHANGE, INC.,     )
             )     **JURY TRIAL DEMANDED**
       DEFENDANT.    )

## NOTICE OF MOTION

TO:    Jerrold E. Salzman, Esq.
       Freeman, Freeman & Salzman
       401 North Michigan Avenue
       Suite 3200
       Chicago, Illinois 60611

PLEASE TAKE NOTICE that on August 19, 2004 at 9:30 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Joan H. Lefkow or any judge sitting in her stead, in the courtroom usually occupied by her in Room 1925, at the Everett McKinley Dirksen Building, and shall then and there present the **Motion for Summary Judgment**, a copy of which is attached to this Notice of Motion.

Dated: August 13, 2003        **COMMODIITIES MANAGEMENT**
                       **EXCHANGE, INC..**

                       By: _____
                              One of its Attorneys

Kenneth K. Dort (ARDC No. 6193880)
George R. Spatz (ARDC No. 6278494)
**GORDON & GLICKSON LLC**
444 North Michigan Avenue, Suite 3600
Chicago, Illinois 60611-3903
(312) 321-1700

**ATTORNEYS FOR**
**COMMODITIES MANAGEMENT EXCHANGE, INC.**



## CERTIFICATE OF SERVICE

I, George R. Spatz, an attorney, state that I caused to be served a copy of the foreg
**Notice of Motion** to:

Jerrold E. Salzman, Esq.
Freeman, Freeman & Salzman
401 North Michigan Avenue
Suite 3200
Chicago, Illinois 60611
Fax: (312) 822-0870

hand delivery on this 13th day of August 2004.

George R. Spatz

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 1 3 2004

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| CHICAGO MERCANTILE EXCHANGE, INC., | ) ) ) | |
| PLAINTIFF, | ) ) | CASE NO. 03 C 4919 |
| v. | ) ) | JUDGE JOAN H. LEFKOW |
| COMMODITIES MANAGEMENT EXCHANGE, INC., | ) ) ) | MAGISTRATE JUDGE ARLANDER KEYS |
| DEFENDANT. | ) ) ) | JURY TRIAL DEMANDED |

DOCKETED
AUG 2 5 2004

## DEFENDANT'S LOCAL RULE 56.1(A)(3) STATEMENT

Defendant Commodities Management Exchange, Inc. ("Commodities Management"), by

its attorneys Kenneth K. Dort and George R. Spatz of Gordon & Glickson LLC, pursuant to

Local Rule 56.1(a)(3) of the United States District Court for the Northern District of Illinois, sets

forth its statement of material facts to which there is no genuine issue and entitles Commodities

Management to a judgment as a matter of law as follows:

## THE PARTIES

1.      Plaintiff Chicago Mercantile Exchange, Inc. is a corporation organized under the

laws of the State of Delaware with its principal place of business at 30 South Wacker Drive,

Chicago, Illinois 60606 (the "Merc"). (Answer and Affirmative Defenses ("Answer") ¶ 2.)

2.      Defendant Commodities Management Exchange, Inc. is a corporation organized

under the laws of the State of Delaware with its principal place of business at 495 Central

Avenue, Northfield, Illinois 60093 ("Commodities Management"). (Answer ¶ 3.)

21

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the Merc's federal claims for the alleged violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  (Answer ¶ 4.)

4.      This Court has supplemental jurisdiction over the Merc's state law claims for the alleged violation of 765 ILCS § 1036/65, 815 ILCS 505/1, *et seq.*, 815 ILCS 510/1, *et seq.*, and common law unfair competition pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims that they form part of the same case or controversy.  (Answer ¶ 4.)

5.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because the claims arose in this District, Commodities is doing business in this District, and the Merc and Commodities reside in this District.  (Answer ¶ 4.)

## UNDISPUTED MATERIAL FACTS

**Key Individuals**

6.      Christopher K. Bowen is General Counsel of the New York Mercantile Exchange. (Answers to Interrogs. ¶ 3.)

7.      Michael K. Castagna is Vice President of Risk Management for Commodities Management.  (Deposition of Michael K. Castagna ("Castagna Dep.") attached hereto, made a part hereof, and marked as Exhibit A at 3-4.)

8.      Ed Charlip is allegedly a former trader who now runs a mortgage lending and hard money lending business, but is not involved in the futures industry.  (Deposition of William Shepard ("Shepard Dep.") attached hereto, made a part hereof, and marked as Exhibit B at 21-22.)

9.    Sanford L. Beard is Chief Operating Officer of Commodities Management. (Deposition of Sanford L. Beard ("Beard Dep.") attached hereto, made a part hereof, and marked as Exhibit C at 28.)

10.    Phupinder S. Gill is President and Chief Operating Officer of the Merc and President of GFX Corp., a foreign exchange trading facility owned by the Merc. (Deposition of Phupinder S. Gill ("Gill Dep.") attached hereto, made a part hereof, and marked as Exhibit D at 8-10.)

11.    Michael Scott Gordon is a director of the Merc and former Chairman of the Merc. (Deposition of Michael Scott Gordon ("Gordon Dep.") attached hereto, made a part hereof, and marked as Exhibit E at 10.)

12.    Ira Harris is a former member of the Merc's board of directors, and is currently a principal of the trading firm Cadent Financial Services. (Gill Dep., Exh. D at 55-56.)

13.    Ryan T. McNally is Associate Director of Customer Relationship Management for the Merc. (Deposition of Ryan T. McNally ("McNally Dep.") attached hereto, made a part hereof, and marked as Exhibit F at 15.)

14.    Gary Monieson is a former trader who is no longer involved in the futures industry. (Shepard Dep., Exh. B at 20-22.)

15.    Jerry Roberts is Managing Director of Corporate Planning for the Merc. (Deposition of Jerry Roberts ("Roberts Dep.") attached hereto, made a part hereof, and marked as Exhibit G at 13.)

16.    William Shepard is President of Shepard International, an inactive principal of Jump, a trading firm, and a member of the Merc's board of directors. (Shepard Dep., Exh. B at 11-16.)

**The Merc's Trademarks**

17.    The Merc is the owner of United States trademark registrations for the marks CME (Reg. No. 1,085,681) and CHICAGO MERCANTILE EXCHANGE (Reg. No. 1,085,682). (Answer ¶ 6.)

18.    In 2003, the Merc adopted a new "brand signature" in order to assure consistency in "the message, the symbols and the identification of the corporation." (Roberts Dep., Exh. G at 60). As part of this initiative the Merc published and distributed a Brand Standards Guide to its staff, instructing the staff on authorized and unauthorized uses of the Merc's mark. (Roberts Dep., Exh. G at 56; McNally Dep., Exh. F at 92-95.) The Merc's Brand Standards Guide is attached hereto, made a part hereof, and marked as Exhibit H. (Id.) In addition, the Merc displays posters and has distributed other collateral material in its offices instructing its staff with respect to authorized and unauthorized uses of the Merc's mark in line with the Brand Standards Guide. (McNally Dep., Exh. F at 93.)

19.    The Merc's "brand signature" consists of the company's initials, CME, the company's globe logo and the full name of the company. Brand Standards Guide, Exh. H at 6.

20.    On August 21, 2003, the Merc first used its "brand signature" in commerce and filed the mark for registration with the United States Patent and Trademark Office (Serial No. 78-290,751). (Answer to Interrogs. ¶ 7). The application information for the CME CHICAGO MERCANTILE EXCHANGE & Globe Design is attached hereto, made a part hereof, and marked as Exhibit I. (Affidavit of George R. Spatz ("Spatz Aff.") attached hereto, made a part hereof, and marked as Exhibit J ¶ 2.)

21.    The Merc's brand signature may only be used in pre-approved formats and "all three components -- the initials, the globe and the company name . . . must always be included."

Brand Standards Guide, Exh. H at 6-7. However, the Merc's design staff is authorized to make exceptions to the use of the complete signature in limited circumstances (e.g., when physical space makes it impossible to use the complete signature). Id. at 7.

22.     An example of the Merc's "brand signature" as used on its website and in its promotional and advertising material is as follows:



(Spatz Aff., Exh. J ¶ 3.) A representative sample of the Merc's use of its "brand signature" in the marketplace is attached hereto, made a part hereof and marked as Exhibit K. (Spatz Aff., Exh. J ¶¶ 3, 5, 6.)

23.     The Merc has instructed its staff to discard and cease use of old logos and has required compliance with its new brand standards, including the new formats for memos and letters. (Roberts Dep., Exh. G at 58; McNally Dep., Exh. F at 95; Brand Standards Guide at 13-21.) The Merc's staff has complied with these requirements. (Id.)

24.     Since the adoption of its "brand signature," the Merc no longer uses its CME or CHICAGO MERCANTILE EXCHANGE marks in any manner or combination other than as outlined in the Brand Standards Guide. *See generally*, Brand Standards Guide, Exh. H.

**Alternative Use of the "CME Initials**

25.     The abbreviation CME is widely used in the fields of medicine, science and religion to signify continuing medical education, coronal mass ejections and the Christian Methodist Episcopal Church, respectively. There are at least forty uses of the initials "CME" having no connection to the Merc or its business. A compendium of third-party use of the initials CME is attached hereto, made a part hereof, and marked as Exhibit L. (Spatz Aff., Exh. J ¶ 8.)

**Commodities Management's Trademark**

26.     In or about early 2000, Commodities Management adopted its CMXCHANGE mark in connection with its online commodities trading platform and has used the CMXCHANGE mark continuously since that time.   (Affidavit of Michael K. Castagna ("Castagna Aff.") attached hereto, made a part hereof, and marked as Exhibit M ¶ 3.)[1]

27.     Since March 2000, Commodities Management has used its mark predominately in connection with its flagship website, www.cmxchange.com, which was registered on March 7, 2000.  (Castagna Aff., Exh. M ¶ 4.)

28.     Commodities Management also promotes its mark in automotive and metals trade publications, and at industry conferences, such as the Institute of Scrap Recycling and Platts Metals Week events.  (Castagna Aff., Exh. M ¶ 5; Castagna Dep., Exh. A at 69, 75; Beard Dep., Exh. C at 69-70.)

29.     In the past, Commodities Management has targeted its marketing at the futures community and attended the 2002 and 2003 Futures Industry Association convention in Boca Raton, Florida to promote its OTC derivatives products.  (Castagna Dep., Exh. A at 69, 75-76; Beard Dep., Exh. C at 82.)

30.     Commodities Management ceased its marketing and use of the CMXCHANGE mark in the OTC derivative markets in or about September 2003 when it launched a wholly owned subsidiary, Commodities Derivatives Exchange, Inc. ("CDXCHANGE"), to trade OTC derivative products under the FLEXCLEAR brand in order to differentiate between its physical

---

[1] A facsimile copy of the signature page of Mr. Castagna's Affidavit is attached hereto.  An original signature page will also be filed promptly upon receipt.

delivery metals business and the separate business of financial derivative products. (Castagna Dep., Exh. A at 87-88, 109-10; Beard Dep., Exh. C at 71-72.)

31.    Commodities Derivatives Exchange, Inc. attended the 2004 Futures Industry Association convention. (Beard Dep., Exh. C at 82.) Commodities Management did not attend the 2004 Futures Industry Association convention and has no intention of entering into futures markets. (Castagna Aff., Exh. M ¶ 10; Beard Dep., Exh. C at 82.)

32.    Commodities Management has done a limited amount of advertising at sporting events (i.e., boxing). (Beard Dep., at 69-70.)

33.    An example of Commodities Management's mark, CMXCHANGE, as used on Commodities Management's website and in its promotional and advertising material is as follows:

(Castagna Aff., Exh. M ¶ 7.) A representative sample of Commodities Management's use and/or prior use of its CMXCHANGE mark in the marketplace is attached hereto, made a part hereof, and marked as Exhibit N. (Id.)

34.    Commodities Management has expended considerable resources publicly building its brand identity and goodwill. (Castagna Dep., Exh. A at 87-88; Beard Dep., Exh. C at 68-69.)

35.    Several third parties use marks identical or similar to Commodities Management's CMXCHANGE mark such as CMXchange (California Metals Exchange – producer of brass/bronze ingots and manager of online metals exchange), (Castagna Dep., Exh. A at 58; Beard Dep. Exh. C at 64), CMXchange (Contract Management Solutions, Inc.), (Spatz Aff., Exh. J ¶ 9), and CM Metals (Chicago, Illinois). (Spatz Aff., Exh. J ¶ 10.) The Merc has not objected to these uses.

**The Merc's Products and Services**

36.    The Merc trades regulated futures as a designated contract market.  (Gill Dep., Exh. D at 50.)

37.    All products currently traded at the Merc have a contract specification in the CME Rulebook.  (Gill Dep., Exh. D at 47; Roberts Dep., Exh. G at 33.)

38.    There are three venues for trading futures at the Merc:  open outcry, electronically via Globex, and privately negotiated.  (Gill Dep., Exh. D at 26-28.)

39.    Privately negotiated trades at the Merc are allowed to take place between two counterparties who may then post the trade on Globex for reporting purposes with no exposure to the marketplace.  (Gill Dep., Exh. D at 53-54.)

40.    The Merc has stringent requirements for becoming a member of its exchange. (Roberts Dep., at 53-55; Shepard Dep., Exh. B at 46-47.)  Section I, Chapter 1 of the CME Rulebook concerning membership is attached hereto, made a part hereof, and marked as Exhibit O.  (Spatz Aff., Exh. J ¶ 4.)

41.    For a retail customer to trade at the Merc they must have a clearing member of the Merc guarantee their position.  (Gill Dep., Exh. D at 34-39.)

42.    The Merc does not trade metals such as aluminum, iron, steel, platinum group metals, alloys or other ferrous and non-ferrous metals for physical delivery or otherwise. (Roberts Dep., Exh. G at 31-32; Gill Dep., Exh. D at 42-44.)

**Commodities Management's Products and Services**

43.    Commodities Management's business consists of physical transactions, consulting and related services, and classified listing for materials.  (Castagna Dep., Exh. A at 10) Commodities Management trades or has traded such metals as aluminum, iron, steel, platinum

group metals, various alloys, and other ferrous and non-ferrous metals. (Castagna Aff., Exh. M ¶ 8.)

44.     For physical transactions, Commodities Management's online exchange facilitates the posting of auctions and classified ad sales. (Castagna Dep., Exh. A at 113-115.) Trading through Commodities Management is done exclusively through these two methods of trading via the Internet at Commodities Management's web site, cmxchange.com. (Castagna Aff., Exh. M ¶ 9.)

45.     Commodities Management has approximately 350 to 400 corporate members. (Castagna Dep., Exh. A at 89-90.)

46.     Each member or prospective member of Commodities Management must complete a comprehensive application form and agree to Commodities Management's detailed terms and conditions governing the operation and use of its exchange and related tools. (Castagna Dep., Exh. A at 90.) Commodities Management's Application Form is attached hereto, made a part hereof, and marked as Exhibit P. (Castagna Dep., Exh. A at 90; Castagna Aff., Exh. M ¶ 11.) Commodities Management's Terms and Conditions are attached hereto, made a part hereof, and marked as Exhibit Q. (Id.) Without going through the application process it is impossible to execute a trade on Commodities Management's platform. (Castagna Aff., Exh. M ¶ 11.)

47.     All of Commodities Management's customers are eligible contract participants under the Commodities Exchange Act, 7 U.S.C. § 1(a)(12). (Castagna Aff., Exh. M ¶ 12.)

48.     Commodities Management's online exchange is not regulated by the Commodities Futures Trading Commission. (Castagna Aff., Exh. M ¶ 12.)

49.     Well over 90% of Commodities Management's business is with three customers, General Motors, Daimler/Chrysler, and United States Steel. (Beard Dep., Exh. C at 51.)

50.     The major automotive companies are highly selective with respect to where and with whom they trade. (Castagna Dep., Exh. A at 113-14.)

51.     At the end of the day, the trades executed on Commodities Management's auction platform result in the physical delivery of large amounts of base metals. (Castagna Dep., Exh. A at 113-114.)

52.     From the launch of its website in early 2000, Commodities Management has developed its business throughout the United States. A series of press releases that track Commodities Management's very public growth is attached hereto, made a part hereof, and marked as Exhibit R. (Castagna Aff., Exh. M ¶ 6.)

53.     As part of its business development, Commodities Management met with senior executives at the Merc, including James J. McNulty, President and Chief Executive Officer; Scott Gordon, Chairman of the Board; Phupinder S. Gill, Managing Director and President Clearing House Division; Jerry Roberts, Managing Director of e-Business Design, Strategy and Operations; Satish S. Nandapurkar, Managing Director of e-Business; John D. Broderik, Director, Clearing Operations Clearing House Department; and Ryan McNally, Associate Director of e-Business, in or about January 2001 to discuss the possibility of using the plaintiff's clearing business to clear trades effected by Commodities Management's members. (McNally Dep., Exh. F at 18-28; Roberts Dep., Exh. G at 14-23; Gill Dep., Exh. D at 10-12; Gordon Dep., Exh. E at 13-16; Beard Dep., Exh. C at 73-75; Castagna Dep., Exh. A at 101-108.)

54.     In connection with meeting the Merc's upper management, Commodities Management provided the Merc with a detailed business plan informing the Merc of

Commodities Management's then-current operations (including the use of the CMXCHANGE mark), as well as its planned expansion. (Castagna Dep., Exh. A at 105.) A true and correct copy of the Commodities Management business plan provided to the Merc is attached hereto, made a part hereof, and marked as Exhibit S. (Castagna Aff., Exh. M ¶ 13.) Said Commodities Management business plan was produced by the Merc from the file of James McNulty, President and Chief Executive Officer. (Spatz Aff., Exh. J ¶ 7.)

**No Bad Faith**

55.    The origin of the CMXCHANGE mark is nothing more than a contraction of Commodities Management's full name, Commodities Management Exchange, Inc., which is itself a concise description of the services that it provides. (Castagna Dep., Exh. A at 50-56, 62-68; Beard Dep., Exh. C at 54-56.) Commodities Management never even considered the Merc when selecting its name, Commodities Management Exchange, Inc., its URL, www.cmxchange.com, or its CMXCHANGE logo. (Castagna Dep., Exh. A at 67.)

56.    At the time Commodities Management selected its URL, www.cmxchange.com, and its logo, CMXCHANGE, it was concerned that California Metals Exchange had trademarked CMXCHANGE in California. However, after contacting California Metals, who stated that it did not have a problem with Commodities Management using the CMXCHANGE mark, Commodities Management moved forward under that mark. (Castagna Dep., Exh. A at 57-63; Beard Dep. Exh. C at 63-68.)

**No Actual Confusion**

57.    The Merc has recently advised the Court that its "case is based on actual confusion." *See* Plaintiff's Motion for Leave to File Rebuttal Report and Depose Defendant's

- 11 -

Expert Walter McCullough filed in the United States District Court for the Northern District of Illinois on August 11, 2004 attached hereto, made a part hereof, and marked as Exhibit T.

58.     In response to Commodities Management's Interrogatory asking the Merc to "[i]dentify all instances of actual confusion between the Merc's use of the CME mark or the CHICAGO MERCANTILE EXCHANGE mark and Commodities' use of the CMXCHANGE mark," the Merc only identified two instances of alleged "actual confusion." (Answer to Interrogs. ¶ 3.) First, the Merc states that William Shepard, a member of the Merc's Board of Directors, viewed a televised boxing match at which a version of Commodities Management's CMXCHANGE mark was displayed on the corner pads of the boxing ring. (Id.) "Based on the announcer's description of the sponsor of the fight," Mr. Shepard allegedly concluded that the Merc was advertising at boxing matches. (Id.) Second, Chris Bowen, General Counsel of the New York Mercantile Exchange, allegedly asked Craig Donohue, then Chairman of the Merc, whether Commodities was affiliated with the Merc at the Futures Industry Association Convention in Boca Raton, Florida in 2003. (Id.)

59.     William Shepard is not a metals supplier or a metals buyer and, accordingly, is not a potential end-user of Commodities Management's products and services. (Shepard Dep., Exh. B at 8-16.)

60.     Mr. Shepard was allegedly confused "by the announcer's description of the sponsor of the fight," and not by the CMXCHANGE logo itself. (Answer to Interrogs. ¶ 3; Shepard Dep., Exh. B at 17-18, 22-24.)

61.     Christopher Bowen is not a metals supplier or a metals buyer and, accordingly, is not a potential end-user of Commodities Management's products and services. (Answer to Interrogs. ¶ 3.)

62.     Mr. Bowen testifies that he does not recall what it was exactly that caused him to be "confused."[2]

63.     Mr. Shepard testifies that two of his friends, Ed Charlip and Gary Monieson, were potentially confused while watching a boxing match with him.  (Shepard Dep., Exh. B at 17-20.)

64.     Neither Ed Charlip nor Gary Monieson is an active trader or involved in the futures or metals industry.  (Shepard Dep., Exh. B at 20-22.)

65.     Phupinder Gill testifies that he thinks that Ira Harris, a former member of the Merc's board of directors and a current trader with Cadent Financial Services was confused. (Gill Dep., Exh. D at 54-55.)

66.     Neither Ira Harris nor Cadent Financial Services is a metals supplier or a metals buyer and, accordingly, is not a potential end-user of Commodities Management's products and services.  (Castagna Aff., Exh. M ¶ 15.)

67.     Scott Gordon, the former chairman of the Merc, testifies that both he and another unidentified senior staff or board member of the Merc were confused by unspecified "literature" at an unspecified industry event.  (Gordon Dep., Exh. E at 11-13, 27-28.)

68.     Scott Gordon is not a metals supplier or a metals buyer and, accordingly, is not a potential end-user of Commodities Management's products and services.  (Gordon Dep., Exh. E at 8-10.)

69.     Moreover, Mr. Gordon does not remember the details surrounding his "confusion."  (Gordon Dep. Exh. E at 11-13, 27-28.)

---

[2] Commodities Management has not yet received Mr. Bowen's deposition transcript.  It will appropriately supplement its 56.1 Statement upon receipt of the transcript.

70.    A survey conducted by Commodities Management concludes that there is a 0% likelihood of confusion between Commodities Management and the Merc arising from Commodities Management's use of its CMXCHANGE mark. *See* Report on a Test of Source Confusion for Commodities Management Exchange, Inc.'s Use of the Mark CMXCHANGE attached hereto, made a part hereof and marked as Exhibit U.

Dated:  August 13, 2004                    Respectfully submitted,

COMMODITIES MANAGEMENT EXCHANGE, INC.

By: _____
                One of Its Attorneys


Kenneth K. Dort (ARDC No. 6193880)
George R. Spatz (ARDC No. 6278494)
GORDON & GLICKSON LLC
444 North Michigan Avenue
Suite 3600
Chicago, Illinois 60611-3903
(312) 321-1700

ATTORNEYS FOR
 COMMODITIES MANAGEMENT EXCHANGE, INC.

- 14 -

# *See Case File for Exhibits*